## READFIELD TELEPHONE AND TELEGRAPH COMPANY

*vs.*

## FRANK B. CYR, and another.

Kennebec.   Opinion May 22, 1901.

*Telephone Companies.   Fixtures.   License.   R. S., c. 6, § 9.   Stat. 1885, c. 378.   R. S., Mass. c. 109.*

In determining the question of whether a chattel has become so affixed to the realty as to become accessory to it and form a part and parcel of it, the modern and most approved rule is to give special prominence to the intention of the party making the annexation, not his hidden, secret intention, but the intention which the law deduces from such external facts as the structure and mode of attachment, the purpose and the use for which the annexation has been made, and the relation and situation of the party making it.

A telephone company which by permission of the municipal officers erects its posts and lines along the highway, under the provisions of chapter 378, P. L. 1885, thereby acquires no interest in the soil except a right to occupy it by the permission of the municipal officers, a mere license revocable at their will, so far as any particular portion of the highway or any particular highway is concerned, and not a permanent vested interest in the land itself.

As between debtor and creditor, such posts, with the wires and insulators thereon, continue to retain their character as chattels and may be seized and sold on execution as personal property.

Agreed statement.   Judgment for plaintiff.

Trespass for tearing down and removing telephone lines, brackets and insulators put up in the highway by the plaintiff, and claimed to have been bought by it as personal property at sale on execution against the Dirigo Telephone Co.

The case was reported to this court from the Superior Court for Kennebec county.

*L. C. Cornish, E. O. and F. E. Beane*, with him, for plaintiff.

*W. C. Eaton*, for defendants.

Fixtures becoming real property:   8 Am. & Eng. Enc. p. 43; 1 Rice on Real Property, p. 52; 1 Kerr on Real Property, p. 111; *Ashmun* v. *Williams*, 8 Pick. 402; *Marcy* v. *Darling*, 8 Pick. 282;

*Aldrich* v. *Parsons & Latham*, 6 N. H. 555; *Binney's case*, 2 Bland's Ch. Rep. 145; *Boston Water Power Company* v. *Boston*, 9 Met. 202; *Drybutter* v. *Bartholomew*, 2 Peere Williams, 127; *Buckeridge* v. *Ingram*, 2 Vesey Jr. 652; *Queen* v. *Cambridge Gas Co.*, 35 E. C. L. 333; *Regina* v. *North Staffordshire Ry. Co.*, 3 El. & El. 392; *West. Union Tel. Co.* v. *Tennessee*, 9 Baxt. 509; *West. Union Tel. Co.* v. *Burlington & S. W. Ry. Co.*, 3 McCrary, 130; 11 Fed. Rep. 1; *Boston Safe Deposit and Trust Co.* v. *Bankers and Merchants Tel. Co.*, 36 Fed. Rep. 288; *Am. Union Tel. Co.* v. *Middleton*, 80 N. Y. 408; *Hudson Telephone Co.* v. *Jersey City*, 49 N. J. L. 303; *City* v. *Telegraph & Telephone Co.*, 40 La. Ann. 41; *Williams* v. *N. Y. Central Railroad Co.*, 16 N. Y. 97, *S. C.* 69 Am. Dec. 651; *People ex. rel. Dunkirk and Fredonia Railroad Co.* v. *Cassidy*, 46 N. Y. 46; *Providence Gas Co.* v. *Thurber*, 2 R. I. 15; *Newport Illuminating Co.* v. *Tax Assessors*, 19 R. I. 632.

The poles and wires of electric light and power companies have repeatedly been held to be real property. *Fechet* v. *Drake*, 12 Pac. Rep. 694; *Hughes* v. *Power Co.*, 53 N. J. Eq. 435; *Keating Imp. Co.* v. *Marshall Power Co.*, 74 Tex. 605; *Badger Co.* v *Marion Power Co.*, 48 Kan. 187; *Forbes* v. *Willimatic Falls Co.*, 19 Oreg. 61.

Analagous cases: *Strickland* v. *Parker*, 54 Maine, 263; *Fifield* v. *M. C. R. R. Co.*, 62 Maine, 77; *Paris* v. *The Norway Water Co.*, 85 Maine 330; *Rollins* v. *Clay*, 33 Maine, 132; *Hall* v. *Benton*, 69 Maine, 346.

Taxed as real estate,—additional cases: *Com.* v. *Boston*, 97 Mass. 555; *Hannibal* v. *M. & K. Tel. Co.*, 31 Mo. App. 23; *Chicago Cen. Ry. Co.* v. *Chicago City Ry. Co.*, 62 Ill. App. 502; *Africa* v. *Knoxville*, 70. Fed. Rep. 729; *Rutland El. Light Co.* v. *Marble City El. Light Co.*, 65 Vt. 377; *Denver Tramway Co.* v. *Londoner*, 20. Colo. 150; *St. Louis* v. *Western Union Tel. Co.*, 63 Fed. Rep. 68; *Levis* v. *City of Newton and Electric Co.*, 75 Fed. Rep. 984; *Suburban Light & Power Co.* v. *East Orange*, (N. J. Eq.) 41 Atl. Rep. 865; *North Jersey St. Ry. Co.* v. *South Orange*, (N. J. Eq.) 43 Atl. Rep. 53; *Citizens St. Ry. Co.* v. *City Ry. Co.*, 56 Fed. Rep. 746, affirmed 166 U. S. 55; *State* v. *Blake*, 35 N. J. L. 208; *State* v. *Jersey City*, 49 N. J. L. 303.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

POWERS, J.   On November 4, 1898, the telephone line of the Dirigo Telephone Co., located in the public highway and running from Mt. Vernon village in Mt. Vernon to Chandler's Mills in Belgrade, with the poles, wires, and insulators on the same, was sold as personal property on an execution against said company and afterwards conveyed by the purchaser to the plaintiff corporation, which then strung a second wire upon said poles.   The defendants acting as the agents of the Dirigo Co., in October, 1899, tore down a part of the line, insulators, and brackets put up by the plaintiff, and for the injury so done, this action of trespass de bonis is brought.   The only question involved is whether the telephone line of the Dirigo Co., as between debtor and creditor, was personal property at the time of its seizure and sale on execution.

There is no universal test by which it can be determined whether a chattel has become so affixed to the realty as to become accessory to it and form a part and parcel of it.   The manner and extent of physical annexation has been declared an uncertain and unsatisfactory criterion, and while it would be impossible to reconcile all the cases upon this subject, yet the modern and most approved rule appears to be to give special prominence to the intention of the party making the annexation. *Hinkley & Egery Iron Co.* v. *Black*, 70 Maine, 473; *Parsons* v. *Copeland*, 38 Maine, 537; *Tolles* v. *Winton*, 63 Conn. 440; *Fifield* v. *Farmer's Nat. Bank*, 148 Ill. 163; *Pope* v. *Jackson*, 65 Maine, 162; *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass, 519; *Aldine Manfg. Co.* v. *Barnard*, 84 Mich. 632; *Erdman* v. *Moore*, 58 N. J. L. 445; *McRea* v. *Central Nat. Bank*, 66 N. Y. 489.   This rule does not apply to cases in which a party makes improvements and permanent erections without right as between him and the owner of the soil.   In such case the intention to preserve the same as property separate and apart from the freehold cannot avail, no matter how plainly that intention may be manifested.   Many other apparent exceptions will be found to involve no real conflict with the rule

above stated, when we remember that the intention, which is material, is not the hidden, secret intention of the party making the annexation, but the intention which the law deduces from such external facts, as the structure and mode of attachment, the purpose and use for which the annexation has been made and the relation and situation of the party making it.

In the case before us, the poles were imbedded in the soil, but could be easily removed without any particular injury to the realty or impairment of its value for any of the uses to which it was suited. The whole line was adapted to the use of that part of the realty with which it was connected, but the poles, wires and insulators could be easily removed and used in the same business elsewhere. Under these circumstances, it is especially important to ascertain what right or interest the Dirigo Co., the owner of these chattels, had in the realty to which it annexed them, in order to determine whether the intention existed thereby to make them permanently a part of the freehold. A different intention may well be inferred from annexations made by a tenant, or mere licensee, than when the same acts are done by the owner of the freehold. Cooley on Torts, 2nd. Ed. 501.

The beneficial use of the soil in our highways has been appropriated by the public for public purposes, but the property in the soil still remains in the owner of the adjoining land, who may use it for any purpose, above or below the surface, which does not injuriously interfere with public uses. A telephone is a public use, and the legislature, by virtue of its power of control over the public roads and highways of the State, may grant to a telephone company the authority to erect its lines along or upon such roads and highways, or it may delegate that power to the municipal officers of the several municipalities, as has been done in this State by statute of 1885, c. 378. A telephone company, however, cannot construct its line along the highway at its own pleasure. It is forbidden to do so without first obtaining a written permit from the municipal officers "specifying where the posts may be located, the kind of posts, and the height at which and the places where the lines may be run." Laws of 1885, c. 378, § 2. Nor is this permission, when

once obtained, final and irrevocable and the use so granted subject to be determined only by the will of the company or the discontinuance of the highway. The same section further provides that "after the erection of the lines, having first given such company, persons, associations, or their agents, opportunity to be heard, the municipal officers may direct any alteration in the location or erection of said posts." These are comprehensive terms. Telephone lines, though affected with a public use, are operated for private gain. Nothing is paid for the valuable privilege of occupying and using the soil of the public roads and highways. The authority to fix the location of the posts, in the first instance, has been wisely given to the municipal officers, and if wisely exercised, the location will be made with a view to existing and probable future conditions. Yet conditions are constantly changing and, in the growth and improvement of our municipalities, the time may come when it may be desirable to alter the location of one or all of the posts of the line from one side of the street to the other, or from one street to another. What at one time was a suitable location may become unsightly, inconvenient, out of harmony with the surroundings, and the public interest be best served by a change of location. We believe that the legislative intention was to confer upon the municipal officers full authority to meet such requirements by directing "any alteration in the location or erection of such posts" to the extent above indicated. The telephone company then has no interest in the soil which supports its posts and lines except a right to occupy it by the permission of the municipal officers, a mere license revocable at their will.

This conclusion is strengthened by the provisions of section 7 of the act of 1885, above cited, that "no enjoyment by any company, persons, or association for any length of time, of the privilege of having or maintaining posts, wires or apparatus in, upon, over or attached to any building or land of other persons shall give a legal right to the continued use of such enjoyment, or raise any presumption of a grant thereof." No legal right to the continued use of the enjoyment of the privilege can be acquired by prescription in the face of this statute. No right to such continued use is granted,

for the only privilege granted in any particular spot, parcel, or portion of land is temporary and not permanent, a mere license revocable at the will of the municipal officers so far as any particular portion of the highway or any particular highway is concerned, and not a permanent vested interest in the land itself.    The provisions of section 2 of the act of 1885 are taken from R. S. of Mass. c. 109, § 2 and 3, and section 7 of the same act is an exact copy of R. S. of Mass. c. 109, § 15.    In reference to the right in the highway acquired under that chapter, Mr. Justice Devens in *Pierce* v *Drew*, 136 Mass. 75, says :    "No right is given these companies to use the highways at their own pleasure, or to compel in all cases, as the plaintiff suggests, a location therein to be given them by the municipal authorities.    The second section of the statute is to be construed with the third section, and shows an intention that a legally constituted board shall determine not only where, but whether there can be a location which shall not incommode the ordinary public ways, with full power to revise its own doings and correct any errors which the practical workings of the arrangement may reveal.    .    .    .    .    No right to take the private property of the owner of the fee in the highway is conferred by this act ; all that is given is the right to use land by permission of the municipal authorities, the whole beneficial use of which had been previously taken from the owner and appropriated to the public.    It is a temporary privilege only which is conferred ; no right is acquired as against the owner of the fee by its enjoyment, nor is any legal right acquired to the continued enjoyment of the privilege or any presumption of a grant raised thereby."

In determining the intention a most important consideration is the relation of the party making the annexation to the property in question.    1 Wash. Real Prop. 5 Ed. page 22.

Tried by this test, no intention can be inferred to make the posts, wires, and insulators in this case a permanent accession to the freehold.    The owner of the chattels was not the owner of the soil. It had no right to the continued enjoyment of its use, simply a revocable license, a temporary privilege which might be determined at any time by the municipal officers.    There is nothing from

which it can be inferred that it intended to deprive itself of its property. It is the temporary character of the privilege, obtained under the act of 1885, which distinguishes it from the rights and interests of railroad and other quasi public corporations in lands taken under the right of eminent domain, or in public roads and highways, the use of which has been directly granted to them by the legislature without any such limitations as are imposed by that act. Under such circumstances, the rights and interests acquired are not subject to be determined at the will of third parties and are permanent and vested.

Cases involving the construction in other states of statutes, widely different from our own, afford little analogy to the case at bar and throw little light upon the question here involved. Whether the posts and wires of a telegraph or telephone line are fixtures under the mechanic's lien-law, or real estate under the tax law of a particular State, must necessarily be determined by other considerations than those which apply as between debtor and creditor. Under R. S., c. 6, § 9, which authorizes real estate to be taxed to the owner or person in possession thereof, this court held in *Paris* v. *Norway, Water Co.*, 85 Maine, 330, that water pipes, hydrants and conduits of a water company, laid through the streets of a city or town, were real estate for the purpose of taxation, but the charter of the defendant company, private and special laws of 1885, c. 369, § 6, authorized it to lay down and maintain them in the streets, and they were not removable at the order of the municipal officers. HASKELL, J., in delivering the opinion of the court says: "In using the street or road they place their pipes or rails in, or upon, the ground, there permanently to remain. They occupy land with appliances which become valuable for the revenue they yield. These appliances are fixed, permanent, used in connection with the soil that supports and sustains them. When considered as the property of their respective companies, they are not land within the common law rule. But when considered as if owned by the same person, who has title to the soil, they may properly enough be so considered." So a marine railway, built by the owners of the soil upon which it rested, was held to pass by a levy upon the real estate

upon which it was built, *Strickland* v. *Parker*, 54 Maine, 263, while side-tracks used by the contractors for building a railroad and laid upon land in which they had no interest were held to be personal property. *Fifield* v. *Maine Central R. R. Co.*, 62 Maine, 77. In *Hall* v. *Benton*, 69 Maine, 346, a boom over land taken by a boom company, under its charter and for its chartered purposes, was real estate for purposes of taxation. The right to maintain the boom was without limitation. In *Am. Union Telegraph Co.* v. *Middleton*, 80 N. Y. 408, cited by defendant's counsel, it is stated in the opinion that the telegraph poles with the wires and attachments thereto, which it was alleged were cut down by the defendant, were affixed to the soil of a highway and constituted a part of the freehold. The report of that case does not show the nature and extent of the plaintiff's right to locate and maintain its poles in the highway. *The Electric Telegraph Co.* v. *Overseers of Salford*, 24 L. J. (N. S.) 146, 11 Ex. 181, the only case cited to support the statement that they form part of the freehold, held that under the English statute, for purposes of taxation, there was a ratable occupation by the appellants of the soil supporting their posts, and is not in conflict with the decision we have reached. On the other hand, in *Newport Illuminating Co.* v. *Assessors*, 19 R. I. 632, where the poles were located in the streets by permission of the city council and the city reserved the right to remove them at any time, it was held that the corporation had acquired no vested right in the streets, and that the poles and wires were simply articles of personal property, although in all probability perhaps they would be permitted to remain substantially as they were for an indefinite period.

Our conclusion is, that from the facts of this case no legal inference can be deduced of an intention on the part of the Dirigo Co. to annex permanently its posts and the insulators which they supported to the freehold and make them a part and parcel thereof, that they continued, as between debtor and creditor, to retain their original character as chattels, and according to the agreement of the parties the entry must be,

*Judgment for the plaintiffs.*
*Damages assessed at $50.00.*