### 4029.  CARVER *v.* THE STATE.

A telegraph company engaged in interstate commerce under the act of Congress of July 24, 1866, by virtue of its written acceptance of the provisions, restrictions, and obligations imposed by that act, has a right to operate lines of telegraph through and over the public or post-roads of any county in the State, and to occupy these roads with its telegraph poles, this right to be enjoyed in subordination to the public use of such roads, and subject to any lawful exercise of the police power of the State or county, so that travel should not be unreasonably obstructed or the public rights unreasonably interfered with. The State can not by any specific statute, nor the county by the action of any of its authorities, prevent such a corporation from placing its lines and poles along the post-roads or routes, or stop the use of them after they are so placed. The limit of their power and authority is regulation as to the manner in which the right given by Congress shall be exercised by such a corporation.

DECIDED APRIL 2, 1912.

Accusation of misdemeanor; from Cobb superior court—Judge Morris. January 20, 1912.

*Clay & Morris, Anderson, Felder, Rountree & Wilson,* for plaintiff in error.

*J. P. Brooke, solicitor-general,* contra.

HILL, C. J. J. L. Carver was convicted of a violation of § 547 of the Penal Code (1910), which is in the following language: "If any person shall obstruct a road registered as aforesaid, by building a fence, or felling a tree, or cutting a ditch in or across

any part of it, or shall make or place in or across any such registered road, or part thereof, an obstruction of any kind which renders the use of the road unsafe or inconvenient, or shall dig or plow up the surface of a registered public road, or remove any dirt or rocks from the same, or shall stop up, fill with dirt, or *obstruct any side-ditch or drain of a public road,* he shall be guilty of a misdemeanor." The indictment (omitting formal parts) charged that the accused obstructed a certain side-ditch and drain of the public highway and road between Marietta and Atlanta, known as the Marietta and Atlanta public road, by placing in said side-ditch and drain, and by causing to be placed in said side-ditch and drain, telephone poles, which thereby obstruct said side-ditch and drain.

The evidence is not in conflict and makes the following case: The Marietta and Atlanta road is a registered public road and has been so for fifty years. It is traveled by the public generally and is used by the R. F. D. mail carriers. The county authorities widened the road, and the poles of the Postal Telegraph-Cable Company, which for years had been along the edge of the road, were left in or near the middle of the road. It became necessary to remove these poles from the middle of the road, as they interfered with the ordinary traveling thereon. The road commissioners, under the direction of the county authorities, refused to designate on the highway or public road where the poles could be removed and replaced, and directed their removal off the highway. The accused, acting for the Postal Telegraph-Cable Company, removed the poles from the middle of the public road, replacing them on the outer edge of the road, near the drain ditch on the side of the road. There were 28 telegraph poles so removed and replaced, with a distance of from 120 to 125 feet between the poles. The location of the poles on the side of the road, after they had been removed from the middle of the road, was still within the right of way of the public road, and it was claimed by the State that these poles obstructed the drainage from the road, and that each and every pole would collect leaves and such things, which caused a dam, that would pond the water, and that the effect of this finally was to cut holes in some places across the road, and the county authorities, after each rain, were put to the expense and trouble of cleaning away the accumulation of leaves

and grass which had been stopped by the obstruction of the poles. These poles had been on the road for about twenty years, until it was widened, and when the road was widened the telegraph company was directed by the county authorities to remove the poles from the road, and, in compliance with that order, the poles were removed from the middle and placed on the edge of the road, near the ditch on the outside edge, as above stated. The Postal Telegraph-Cable Company used the poles in question in its interstate and intrastate business.

The controlling legal question in the case is as to the right of the county authorities to prohibit a telegraph company from placing its poles on the highway or public road, or to require the company to move its poles off the highway or road. It is conceded by counsel for the plaintiff in error that the county authorities can regulate the use of the highway by telegraph companies, and may designate where the poles of the company shall be placed, or where they may be removed. It is insisted, however, that the county authorities can not deny to the telegraph company the right to occupy the highways or post-roads with its poles and lines; in other words, that the power of the county is regulative, and not prohibitive. The telegraph company claims the right to use the highway by placing its poles and lines thereon, under the act of Congress approved July 24, 1866. (Rev. Stat. U. S. § 5263.) This statute reads as follows: "Any telegraph company now organized, or which may hereafter be organized, under the laws of any State, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams of water of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel of such military or post-roads." "Before any telegraph company shall exercise any of the powers or privileges conferred by law, such company shall file their written acceptance with the postmaster-general of the restrictions and obligations required by law." The accused offered to prove the acceptance by the Postal Telegraph-Cable Company of the privileges conferred by

the act of Congress aforesaid, by introducing a certified copy of the original acceptance, of file in the postoffice department, duly certified by the postmaster-general and under the seal of the department. The court excluded the testimony as irrelevant and immaterial; and to this the defendant excepted.

The act of Congress approved March 1, 1884, declares that "all public roads and highways, while kept up and maintained as such, are hereby declared to be post-routes." Under the evidence, the Marietta and Atlanta public road referred to in the indictment is a post-route or road, in the contemplation of the act of Congress just quoted. The Postal Telegraph-Cable Company was organized under a charter granted by the State of Delaware. Congress has the constitutional power to pass an act giving to telegraph companies organized under State laws the right to construct and use lines of telegraph along any of the military or post-roads of the United States. Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1 (24 L. ed. 108). This is on the theory that telegraph lines extending through different States for the purpose of transmitting interstate messages, are instruments of commerce which are protected by the commerce clause of the Federal constitution, and the messages passing over such lines from one State to another constitute a portion of the commerce itself. Western Union Tel. Co. v. James, 162 U. S. 650 (40 L. ed. 1105). A telegraph company, therefore, engaged in interstate commerce, which has accepted the provisions, restrictions, and obligations imposed by the act of Congress of July 24, 1866, supra, has the right to occupy the public roads or post-routes of the State or county with its telegraph poles used in the construction and maintenance of its business. This right, however, is to be enjoyed in subordination to public use and private rights, and subject to any lawful exercise of the police power belonging to the State or to its municipalities or counties. Richmond v. Southern Bell Tel. Co., 174 U. S. 761 (19 Sup. Ct. 778, 43 L. ed. 1162). In the case of the Western Union Telegraph Co. v. Massachusetts, 125 U. S. 530 (8 Sup. Ct. 961, 31 L. ed. 790), the Supreme Court holds that the State could not interfere by any specific statute to prevent a corporation from placing its lines along the post-roads, or stop the use of them after they were placed there; nevertheless, the company receiving the benefit of the laws of the State for the

protection of its property is liable to be taxed on its property as any other person would be. It never could have been intended by the Congress of the United States, in conferring upon a corporation of one State the authority to enter the territory of any other State and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the State into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support. These decisions simply go to the extent of holding that the act of Congress, in permitting the telegraph company to lay its poles, necessary to the transaction of its business, on the post-roads of the different States, was merely permissive in character. It was not intended to relieve the company either from the ordinary burdens of taxation or from any lawful exercise of the police power of the State, or of counties or municipalities of the State. In the case of Western Union Telegraph Co. *v.* Massachusetts, supra, Mr. Justice Miller said: "The telegraph company, which is the defendant here, derived its franchise to be a corporation, and to exercise the function of telegraphing, from the State of New York. It owes its existence, its capacity to contract, its right to sue and be sued, and to exercise the business of telegraphy, to the laws of the State under which it is organized. But the privilege of running the lines of its wires 'through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States . . ,' is granted it by the act of Congress. . . While the State could not interfere by any specific statute to prevent a corporation from placing its lines along the post-roads, or stop the use of them after they were placed there, nevertheless the company receiving the benefit of the laws of the State for the protection of its property and its rights is liable to be taxed upon its real or personal property, as any other person would be. . . If the Congress of the United States had authority to say that the company might construct and operate its telegraph over these lines, as we have repeatedly held it had, the State can have no authority to say it shall not be done." In Western Union Telegraph Co. *v.* Lakin, 53 Washington, 326 (101 Pac. 1094), the court said: "The company possessed under its Federal franchise the right to do business upon all the roads and highways in the county of Pierce, whether within or without

incorporated cities or towns. This right could not be denied. The power of the city was limited to its right to regulate the use of the privilege granted by Congress. It might provide that poles and wires should be carried over certain streets, that the wires should be carried on poles or buried in the ground, that travel should not be unreasonably obstructed, and that the poles should be of certain height, and other like incidents. Beyond this it had no power to go."

It would seem that these decisions settle the question of law raised by the record. The Postal Telegraph-Cable Company, whose employee was indicted and convicted, was a State corporation. It owes its existence as such to a charter granted by the State of Delaware, but it is also an interstate corporation, and, as such, derived from the act of Congress the privilege or right of running its lines of wires over any public or post-road in any county of any State in the United States; and the county authorities, therefore, had no right to prohibit the use of this public road by the company in placing its poles thereon, and were not authorized to have the poles already placed there removed. According to the decisions of the Supreme Court just quoted, the State itself, by specific statute, could not prevent the company from placing its line along its post-roads or stop the use of them after they had been placed there. The county was only authorized to regulate the use of the privilege granted by Congress. The county could designate a place on the public road where the poles should be erected or buried in the ground. It could lawfully make such regulations as would prevent any unreasonable obstruction of the public road or interference with public travel. The learned trial judge in the present case, however, utterly ignored any right of the company under the act of Congress. He refused to admit evidence showing that the company had accepted the privilege of the act of July 24, 1866. In his instructions to the jury he refused in any manner to recognize the act of Congress as at all applicable to the facts of the case. He treated the agent of the telegraph company as an ordinary trespasser upon the public road. In this we think he was in error. The act of the agent of the company in locating the telegraph poles should have been interpreted in the light of the rights of the company under the act of Congress above quoted. Neither the company nor its agents, in pursuance of these rights, were in any

sense trespassers. The company was entitled to use the road, subject only to the proper exercise of the police power of the county in making regulations as to the manner in which it should be used. Now, the evidence in this case shows that the county refused to permit the use of the road at all. It ordered the company to take up the poles already on the road and which had been on the road for twenty years. It refused to designate any point on the road where these poles could be placed. This conduct of the county authorities was not only unauthorized, but arbitrary. It left the agents of the company only one alternative,—either to permit the poles to remain where they were and had been for many years without objection, or to exercise their judgment in removing the poles and in replacing them on such parts of the public highway as would not interfere with ordinary travel thereon; and if the jury believed that the agents of the company had made a reasonable and proper exercise of their discretion, and had replaced the poles on the public road in a position or location where they would be less liable to interfere with public travel, and where in fact they did not seriously or materially obstruct the ditch or drain of the road, then, under these circumstances, the accused should have been acquitted; and the court should have complied with his written requests embodying instructions to the jury to this effect. If such instructions had been given to the jury, they could very reasonably have concluded that the accused had not violated the statute under which the indictment was framed.

It is manifest that after the road had been widened and the poles left in the middle of the road, where they necessarily obstructed the road and interfered with public travel, they should have been removed. It is equally manifest that the county should have designated some place on the road where these poles could have been properly replaced, so that they would not materially or substantially interfere with the use of the public road. Failing to do this, and ordering the company to take up the poles from the middle of the road, and not to replace them on any part thereof, it clearly did so without regard to the rights or the privileges of the company, granted to it by the provisions of the act of Congress; and if, in this exigency, caused by the county through its unlawful and arbitrary conduct, the company, through its agents, removed the poles from the middle of the road and replaced them in a

location where they would least interfere with the rights of travelers, or would be less likely to cause an obstruction to the road, we do not think the county has the right to complain. Indeed, it is difficult to imagine how the telegraph company ·violated the statute on which the indictment was framed, or was lacking in proper respect and consideration for the rights of the county or the public, when all it did was to remove the poles from the middle of the road, where they were obstructions to public travel, and place them on the extreme edge of the road, where they were least likely to interfere with travel, and in the same relative position on the road where, before the road was widened, they had been allowed to remain for nearly a quarter of a century.

The question as to whether the telegraph company could lawfully take and use any part of the public highway, without first paying for the part actually occupied, is not involved. As to this point, see City of St. Louis v. W. U. Telegraph Co., 148 U. S. 92 (13 Sup. Ct. 485, 37 L. ed. 380).

We note a variance between the allegation of the indictment and the proof as to the character of the poles alleged to constitute the obstructions complained of, the allegation being that they were *telephone poles,* and the proof showing that they were telegraph poles. Richmond v. Southern Bell Tel. Co., 174 U. S. 761 (19 Sup. Ct. 778, 43 L. ed. 1162). No question was made in the record as to the materiality of this variance, but the poles were treated by both sides as being poles of the telegraph company, covered by the act of Congress. The use of the word "telephone" in the indictment seems to have been regarded merely as a clerical or typographical error.

For the reasons above stated, we think the conviction in this case was unauthorized, and that a new trial should have been granted.                    *Judgment reversed.*