75 So.2d 796 (1954)
SOUTHERN BELL TELEPHONE and TELEGRAPH COMPANY, a corporation, Petitioner,
v.
STATE of Florida, ex rel. Richard W. ERVIN, Attorney General, and Richard H. Simpson, W. Howard Frankland, Earl P. Powers, Thomas B. Manuel and J. Saxton Lloyd, constituted and being all of the duly appointed, qualified and acting members of the State Road Department of Florida, Respondents.
Supreme Court of Florida. En Banc.
November 19, 1954.
*797 Harold B. Wahl, Loftin & Wahl, Jacksonville, Chas. S. Ausley, Ausley & Ausley, Tallahassee, E.W. Smith, John A. Boykin, Jr., and Rexford L. Hawkins, Atlanta, Ga., for petitioner.
Richard W. Ervin, Atty. Gen., T. Paine Kelly, Asst. Atty. Gen., J. Turner Butler, D. Fred McMullen, for respondents.
DREW, Justice.
This action arises out of a controversy between the petitioner, Southern Bell Telephone and Telegraph Company, and the State Road Department of Florida, concerning the construction of the multimillion dollar Jacksonville Expressway. This project included what was originally known as the Arlington Bridge but is now known as the Mathews Bridge; the Interstate Bridge; and the extensive and elaborate limited access approaches to both of these large bridges across the St. Johns River.
It was evident from the inception of this project that it would be necessary to remove and relocate the facilities of the Telephone Company which had been theretofore constructed upon, along and beneath the public streets of the City of Jacksonville (properly designated State Roads before the project was commenced) which were to be incorporated within the much larger and more elaborate expressway system of highways. It was evident that it would be necessary not only for the Telephone Company to remove and relocate its facilities in the streets extending in the same direction as the new expressway but that it would likewise be necessary to remove and relocate its facilities where the same were located in streets which intersected said expressway but which intersections in the interests of handling the traffic which would flow over such system were to be eliminated. The Telephone Company took the position that it was the obligation of the State Road Department of Florida and not the Telephone Company to remove and relocate such facilities because the expressway was designed and was being built to accommodate a new and different high speed Federal Expressway and could not under any circumstances be construed to be a "common use of said roads or highways" within the purview of Section 362.01, F.S. 1951, F.S.A., hereafter more particularly discussed. The Telephone Company insisted that to compel it to remove and relocate its facilities at its own expense to accommodate the construction of such a new and different type of highway, when railroads are uniformly and systematically relieved of the cost of relocating their facilities on such projects, constituted, so far as it was concerned, a violation of Sections 1 and 12 of the Declaration of Rights of the Constitution of Florida, F.S.A., and the Fourteenth Amendment to the Constitution of the United States. Moreover, the Telephone Company argued that inasmuch as the bridges involved were toll bridges and were proprietary rather than governmental in their nature, the police power of the State could not lawfully be exercised to compel the Telephone Company to relocate its facilities at its own expense. It was further claimed by the Telephone Company that it was unreasonable, arbitrary and discriminatory and in violation of its constitutional rights under both the Federal and State Constitutions to require it at its own expense to remove and relocate its facilities on Federal aid highway projects when such facilities constituted no hazard to travel on the streets on which they were located, when the Telephone Company received no benefit from the construction of the project, and when owners of vehicular traffic who are benefited are not required to make any contribution to the cost of the project. Finally, it was urged by the Telephone Company that it was beyond the power of the State Road Department of Florida in the exercise of its police power to require *798 the relocation of facilities of the Telephone Company at its own expense on a Federal aid highway project which upon completion would form a part of the national system of interstate and defense highways.
To obtain a judicial determination of the foregoing controversy, an action for injunction was initiated in the Circuit Court below. The Telephone Company's answer squarely presented the issues above outlined in connection with the expense of this major alteration and relocation of its facilities. The Road Department moved to strike every material defensive allegation in the answer and, on hearing before the lower court, such motion was granted. In this order the lower court held that each of the contentions of the Telephone Company was without merit, thereby determining that the entire cost of the work was the burden of the Telephone Company. We are now confronted with a petition for writ of certiorari challenging the correctness of that order and presenting for our determination the various reasons assigned by the Telephone Company why the cost of relocating their facilities should be borne by the State Road Department of Florida. Both sides agree that there is only one basic question involved and that is whether the cost of moving and relocating the telephone facilities in connection with the construction of the Jacksonville Expressway System is to be borne by the Telephone Company on the one hand or the taxpayers of the State of Florida on the other.
Section 362.01, F.S. 1951, F.S.A., reads as follows:
"To occupy roads.  Any telegraph or telephone company chartered by this or another state, or any individual operating or desiring to operate a telegraph or telephone line, or lines, in this state, may erect posts, wires and other fixtures for telegraph or telephone purposes on or beside any public road or highway; provided, however, that the same shall not be set so as to obstruct or interfere with the common uses of said roads or highways. Permission to occupy the streets of an incorporated city or town must first be obtained from the city or town council."
Since the first telephone wire was strung in the State of Florida the telephone companies have had the right to use, and in most all instances have used, the public roads and highways of this State over, on, and under which they have constructed their principal transmission lines.
Since the enactment of this statute, this Court has had occasion in only one instance to refer to it. In the case of Peninsular Telephone Company v. Marks, 144 Fla. 652, 655, 198 So. 330, 332, in speaking of Section 6337, C.G.L. which is now Section 362.01, supra, we said:
"The privilege granted supra [under the statute] to erect posts, wires and other fixtures for telephone and telegraph purposes on or beside any public road, highway or street contemplates that the small shall be erected and maintained in such a manner as not `to obstruct or interfere with the common uses of said road, highway or street'. The primary purpose for the construction and improvements to streets and highways is for the traveling public. In the construction of Section 6337, supra, one of the secondary purposes for which a street or highway could be used was for the erection and maintenance of posts, wires and fixtures commonly used by telephone and telegraph companies, but the use thereof on the streets and highways was so restricted that the appliances and fixtures should not obstruct or interfere with common uses of the streets and highways."
The Telephone Company insists that the construction of the Jacksonville Expressway does not constitute a common use of the highway; that it is a new idea, a novel conception, a super road, sometimes following present streets but more often cutting across existing streets and through other properties with no valid relation or similarity to a widening or improvement of the existing way.
*799 On the other hand it readily concedes that "Day in and day out the Telephone Company, without question, relocates at its own expense facilities which obstruct the ordinary local common uses of the highway, when a highway is widened or otherwise improved for local uses and when there are none of the unusual factors involved in this case." We, therefore, direct our attention first to the question of whether the nature and extent of the Expressway System justifies the instant question receiving any different treatment than the ordinary and usual improvement of a highway.
The statute authorizes the Telephone Company to use the roads or highways for its facilities so long as such facilities shall not obstruct or interfere with the common uses of said streets. Even if the proviso in the act had been omitted, it would not have conferred upon the company any absolute or indefeasible right to have such facilities remain in the same place forever. In the only instance, cited supra, where this statute has been before this Court, we held that streets are primarily for the benefit of the traveling public, and that the use of such streets by Telephone Companies was secondary and restricted to the extent that such facilities should not interfere with the common uses thereof. The streets were built first and when the Telephone Company installed its facilities in the streets it did so knowing that if it became necessary in the future to improve such streets in the interest of the general welfare, its facilities would have to be moved, relocated or rearranged. In other words, it knew then that its facilities and business was then and always would be subservient to the rights of the public.
It is true that the Jacksonville Expressway contemplates a gigantic system of roads and bridges, engineered to the most modern ideas and designed to handle a great volume of traffic. Outside of size, concept and method of financing, it is no different from many other road improvements. Its primary purpose is to handle vehicular traffic  the same as any other highway. True, its roadways are wider, access is limited, and its cost much greater; but it is still a highway designed to handle vehicular traffic and, although tolls are charged on the bridges to aid in the financing, it is nevertheless a public highway. Its construction promotes the general welfare and insures the safety of the traveling public.
The Court takes judicial notice that the millions of automobiles being produced and sold in this Country and placed upon its highways have created a condition that makes safe, adequate highways the very first order of business of the various states and the political subdivisions thereof. It provides one of the clearest fields for the exercise of the police power. We fail to see an iota of difference in the legal principles involved in the building of the Jacksonville Expressway  so far as the instant problem is concerned  and those which were involved when the first automobile came along and required the paving of the roads and the moving of the telephone and telegraph poles.
It would be just as logical to argue that no rights existed in the Telephone Company to install co-axial cables in the highways because such was a novel means of communication never contemplated when the statute was enacted as it is to argue that the building of this expressway is so radically different from the ordinary improvement of a highway as to relieve the Telephone Company of its liability of relocating its facilities. Both are the natural result of progress and we should so construe the statute as to give our forefathers credit for knowing that progress and improvement would never cease. Moreover it is significant that although such changes have been required constantly for over seventy-five years, this is the first time in this State that the idea has been advanced that the State should bear the expense.
Having concluded that the same rules of law govern this situation as would *800 be the case in an ordinary street improvement, this case is governed by the general principle of law set forth in 52 Am.Jur. 64, Section 34 as follows:
"A statutory grant to a corporation of a right to construct telephone lines along and upon a public highway confers the privilege subject to the duty on the part of the corporation of so changing and adjusting, when necessary, its system of operating its telephone lines as not to curtail the enjoyment by the public of the best modes of travel and transportation upon the streets. This is true whether the legislature has or has not imposed the condition that the public shall not be incommoded in the use of the street. The original location of poles in a street by telegraph, telephone, or other public service corporations, pursuant to permission of the authorities, creates no absolute, indefeasible right or irrevocable license to have such poles remain at the particular spot for all time; and irrespective of statutory provisions authorizing the public authorities to direct such changes, said authorities may enforce reasonable regulations requiring these companies to change the location of their poles in a street. If telephone lines are so located as materially to interfere with and to constitute an obstruction to the public use of a street or highway and with work lawfully prosecuted in permanently improving the same, the company may be required to remove temporarily and reset its poles at its own expense, since franchise rights of these companies are subordinate to those of the public. An interstate telegraph company may, consistently with the Federal Constitution, be required to bear the expense of the changes in its poles and wires made necessary by the compulsory abolition of highway grade crossings of a railroad."
With reference to the use of streets generally by public utilities, see Pond, Public Utilities (3d ed. 1932) Vol. 2, p. 885, sec. 506; Elliott, Roads and Streets (4th ed. 1926) Vol. 2, p. 1458, sec. 1066; McQuillin, The Law of Municipal Corporations (3d ed. 1950) Vol. 12, p. 253, sec. 34.77.
The Telephone Company contends, however, that the State Road Department could not lawfully require it to remove and relocate its facilities at its own expense on Federal aid highway projects such as this. They argue that to do so amounts to the use of the State's police power to further the works of the Federal Government, which it obviously has no right to do. An identical position was taken by the same company in the case of Southern Bell Telephone and Telegraph Company v. Commonwealth, Ky., 266 S.W.2d 308, 311, 312, in connection with a like controversy arising out of the construction of the Watterson Expressway in Louisville, Kentucky. In passing on this argument the Kentucky Court of Appeals stated:
"The appellant further contends that the police power of the Commonwealth may not be used to further a Federal-aid project such as the Watterson Expressway. It is insisted that in requiring relocation of appellant's property the state is merely acting as the agent or representative of the Federal government and is, therefore, invoking its police power in behalf of another. We are unable to agree with this contention.
"A review of the legislative history of the Federal-aid highway Acts will show that not only did Congress not intend for the various states to act or become agents of the Federal government but also the Federal government has never taken over the ownership, jurisdiction, or control of the highways of which the project under consideration is a part. Federal-aid legislation merely recognizes a national interest in the improvement of public highways owned and built by the states and their subdivisions and provides a measure of aid to the states in meeting the cost of improving and *801 constructing such highways. The Federal legislation has not taken away or attempted to assume state power and control over the highways. Title to the right of way is taken in the name of the state, and under the Federal-aid Acts, the states are required to supervise construction and are responsible for the maintenance of Federal-aid highways.
"The judicial construction of Federal-aid legislation has consistently been that the mere fact the United States contributes to or assists states in the building of roads does not take from or limit the states in the exercise of their police power or the right to control and regulate the use of their roads. Whitney v. Fife, 270 Ky. 434, 109 S.W.2d 832; State ex rel. Daniel v. John P. McNutt, [Co.] 180 S.C. 19, 185 S.E. 25; and South Carolina [State] Highway Department v. Barnwell Bros., 303 U.S. 177 [625], 58 S.Ct. 510, 82 L.Ed. 734."
We adopt the views expressed above as our own.
There was also involved in the above case the identical question raised in this case concerning an alleged violation of the constitutional rights of the telephone company because, it is alleged, railroads are "uniformly and systematically" relieved of the cost of relocating its facilities. We fail to see that the problem is in any respects similar. Moreover, we agree with the Kentucky Court that, "whether discriminatory or not, it cannot be insisted that the state is a participant in the payment of the cost of removing and relocating railroad facilities. That the Federal government has made special provision for railroad companies does not limit or restrict the state in the rights which it asserts in this action."
We entertain no doubts that the streets involved in the building of the Expressway have been lawfully designated State Roads and are under the supervision and jurisdiction of the State Road Department. Nor do we entertain the slightest doubt that the State Road Department of Florida is vested with the power to compel the removal and relocation of the facilities of the Telephone Company where necessary in the improvement or proper maintenance of highways under its jurisdiction. For the reasons we have heretofore stated, the public highways of this State, their proper maintenance and improvement, are closely interwoven with and have a most profound relation to the general welfare of the State and its citizens. The State Road Department is the public body vested by the laws of this State with jurisdiction over the highways designated as State Roads. In all actions taken by it in the performance of its duties and the furtherance of its objectives, it exercises a part of the sovereign power of the State. It was clearly within its power to compel obedience to its requirements in connection with the instant problem. We hold it acted within its power and, under the facts shown by this record, there was no abuse of that power.
After this case was originally argued before us, the appellate courts of Georgia and Kentucky have had occasion to pass on practically identical questions. These cases are Southern Bell Telephone and Telegraph Company v. Commonwealth, supra, and City of Macon v. Southern Bell Telephone and Telegraph Company, 89 Ga. App. 252, 79 S.E.2d 265. In both of these cases the petitioner here was a party. In both cases it was determined that the cost of relocating its facilities should be borne by it. The statute involved in the Kentucky case and the points raised there are almost identical to those in the instant case. In the Georgia case the statute contained no requirement that the facilities should not "interfere with" or "obstruct" the use of the street as in our statute and the statutes of many other states. There the only restriction was that such streets could be used only "with the approval" of the proper authorities. Nevertheless, the Georgia court held that where a street was abandoned and placed to the use of building a hospital thereon, it was the sole responsibility *802 of the Telephone Company to remove and relocate its facilities at its own expense. These two cases standing alone, and the authorities cited therein, are clear authority for upholding the lower court and the views expressed here.
Certiorari denied.
ROBERTS, C.J., SEBRING and HOBSON, JJ., and GIBLIN, Associate Justice, concur.
TERRELL and THOMAS, JJ., dissent.
MATHEWS, J., not participating.