**BELLSOUTH TELECOMMUNICATIONS, INC., Plaintiff,**

v.

**CITY OF CORAL SPRINGS, FLORIDA, Defendant.**

No. 97–7010–CIV.

United States District Court, S.D. Florida.

Jan. 25, 1999.

Thomas A. Dye, Miami, FL, for plaintiff.

John R. Hargrove, Thomas A. Dye, Heinrich Gordon Hargrove Weihe & James, Fort Lauderdale, FL, Kerry Lee Ezrol, Josias Goren Cherof Doody & Ezrol PA, Fort Lauderdale, FL, Valerie J. Martin, Office of the Atty. Gen., Fort Lauderdale, FL, Dorian Sue Denburg, Fred Ashmore Walters, BellSouth Telecommunications Legal Dept., Atlanta, GA, Frederick E. Dooley, William L. Lowery, Miller & Van Eaton, Washington, DC, for defendant.

### *OMNIBUS ORDER ON SUMMARY JUDGMENT*

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon various motions filed by the parties, including Bellsouth's Motion for Summary Judgment [DE 42], City of Coral Springs's Cross–Motion for Summary Judgment [DE 51], Bellsouth's Motion for Stay [DE 64], Bellsouth's Motion to Strike [DE 65], City of Coral Springs's Motion for Leave to File Supplemental Motion [DE 81], both parties' discovery-related motions, and Bellsouth's Motion to Continue [DE 108]. The Court has carefully considered the motions and the entire file herein, and is otherwise fully advised in the premises.

### I. BACKGROUND

Bellsouth's Complaint in this action seeks a declaratory judgment and injunctive relief striking down Ordinance 97–114 of the defendant City of Coral Springs ("City"). Bellsouth argues that the Ordinance is preempted by federal and state law, as well as unconstitutional under the Florida and United States Constitutions as an impairment of contract, violation of equal protection and violation of due pro-

cess. The City asserts that Ordinance 97–114 is valid and asserts counterclaims alleging Bellsouth's failure to perform under Ordinance 97–114 and alleges breach of contract under a 1965 contract (Ordinance 106) between Bellsouth's predecessor-in-interest and the City regarding Bellsouth's use of the City's rights-of-way and the City's option to purchase Bellsouth's facilities in the rights-of-way after thirty years. In particular, the City alleges Bellsouth has breached the 1965 contract/ordinance by frustrating the City's option to purchase the telephone-related property used in connection with the City's grant to Bellsouth of the right to use the City's right-of-way. The City alleges that Bellsouth has refused to cooperate to evaluate the property in the right-of-way necessary to effectuate the City's purchase under the 1965 contract/ordinance. Both sides have filed motions for summary judgment on the issues presented by the complaint.

## II. DISCUSSION

This case concerns the interaction between federal and state preemption of the regulation of the telecommunications field and the historical power of local governments to control what happens within local rights-of-way. Within the last few years, both the United States Congress and the Florida Legislature governments have enacted sweeping telecommunications reform legislation. These statutes, while preempting local control over telecommunications in general, explicitly excluded from preemption local control over rights-of-way.

### A. Federal Law

In 1996, Congress enacted the Federal Telecommunications Act of 1996 ("FTA"). The relevant section of the FTA for this case is 47 U.S.C. § 253 (1999),[1] which provides:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

In Section 253, Congress made a distinction between the authority of states in subsection (b) and local governments in subsection (c). While states may regulate universal service, protect consumers, ensure quality and protect the public safety and welfare, local governments can only manage the public rights-of-way, unless of course a state specifically delegated the state authority to its local governments. *AT & T Communications v. City of Dallas*, 8 F.Supp.2d 582, 591 (N.D.Texas 1998).[2]

---

1. All statutory cites are to 1999.

2. In applying this law to this case, the Court will follow the well-reasoned opinion of the Honorable Jerry Buchmeyer, Chief Judge of the Northern District of Texas, in *AT & T Communications v. City of Dallas*.

The *City of Dallas* opinion in turn relies upon the analysis in *AT & T v. City of Austin*,

975 F.Supp. 928 (W.D.Tex.1997). While the defendant City herein correctly distinguishes the facts of *City of Austin*, the opinion in *City of Dallas* is relevant to this case. In *City of Austin*, the telecommunications provider that sought entry was "non-facility based." 975 F.Supp. at 934. That is, it was not going to even use the rights-of-way. However, in *City of Dallas*, the plaintiff telecommunications

In determining what "manage the public rights-of-way" in federal law means as applied to Ordinance 97–114, this Court will look to the opinion of the agency charged with interpreting and enforcing the FTA, the Federal Communications Commission ("FCC"). The FCC has stated:

> We recognize that section 253(c) preserves the authority of state and local governments to manage public rights-of-way. Local governments must be allowed to perform the range of vital tasks necessary to preserve the physical integrity of streets and highways, to control the orderly flow of vehicles and pedestrians, to manage gas, water, cable (both electric and cable television), and telephone facilities that crisscross the streets and public rights-of-way. We have previously described the types of activities that fall within the sphere of appropriate rights-of-way management in both the Classic Telephone Decision and the OVS Orders, and that analysis of what constitutes appropriate rights-of-way management continues to set the parameters of local authority. These matters include coordination of construction schedules, determination of insurance, bonding and indemnity requirements, establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way · to prevent interference between them.

*In re TCI Cablevision of Oakland County, Inc.,* 12 F.C.C.R. 21396, 1997 WL 580831 (F.C.C.1997), at ¶ 103.[3] (Cited with approval in *City of Dallas,* 8 F.Supp.2d at 591–92.)

## B. State Law

The State of Florida has generally delegated power over telecommunication companies to the Public Service Commission ("PSC"), a statewide administrative agency. Fla. Stat. § 364.01. This exclusive jurisdiction of the PSC preempts local control over telecommunication companies, except for the regulation of use of rights-of-way and collection of a reasonable fee for the use thereof. Fla. Stat. § 364.01(2); Fla. Stat. § 337.401.[4] However, state law further restricts municipal regulation of telecommunication companies by limiting the fee allowed to be collected by municipalities from telecommunications companies for the granting of permission to occupy municipal rights-of-way to one percent of the gross receipts on recurring local service revenue for services provided within the corporate limits of the municipality. Fla. Stat. § 337.401(3) and (5). In addition, in 1998, the Florida legislature amended this section to explicitly forbid local governments from "asserting or exercising regulatory control" over telecommunications companies regarding operations, systems, qualifications, services, service quality, service territory, and pricing. Fla. Stat. § 337.401(6). Finally, this 1998 amendment also made clear that any telecommunications company that has obtained permission to occupy or is otherwise lawfully occupying the roads or rights-of-way of a city on May 22, 1998, "shall not be required to obtain additional consent to continue such lawful occupation of those roads or rights-of-way," except that a city may impose a fee or reasonably regulate

---

**3.** See also the *Classic Telephone* decision, in which the FCC stated that a city may only provider sought to provide local phone service by using the City's rights-of-way, a similar situation as in this case. 8 F.Supp. at 587. (The fact that the case at bar involves the incumbent Local Exchange Carrier ("LEC"), while City of Dallas concerned a competitor to the incumbent LEC, is irrelevant, as Congress specifically stated in subsection 253(c) that local government rights-of-way regulation must be non-discriminatory.)

justify a local statute, regulation, or other legal requirement if it can show that the requirement is "an exercise of public rights-of-way management authority or the imposition of compensation requirements for the use of such rights of way." 11 F.C.C.R. 13082, at ¶ 40.

**4.** Local governments also have the power to tax the use of telecommunication services. Fla. Stat. § 166.231(9). That provision is not relevant to this discussion.

the use of the rights-of-way. Fla Stat. § 337.401(7).

The Supreme Court of Florida has recognized that telephone companies have the right to use the public roads and highways of Florida. *Southern Bell Tel. & Tel. Co. v. Ervin,* 75 So.2d 796, 798 (Fla.1954). This right is conditioned on the responsibility not to obstruct or interfere with the use of the rights-of-way. *Id.* at 799. As it turns out, this 1954 holding is consistent with the recent federal and state legislation limiting regulation of telecommunications by local governments to reasonable regulation of the rights-of-way.

### C. Ordinance 97–114

As outlined above, while federal and state law preempt local control over telecommunication companies, both Congress and the Florida legislature specifically excluded from preemption municipal control over rights-of-way. In addition, both state and federal law allow municipalities to collect a 1% gross receipts fee from telecommunication companies that use rights-of-way in that locality. Thus, both Bellsouth and the Citys' arguments regarding Ordinance 97–114 prove too much. Following the plain language of both the state and federal statutes, and Chief Judge Buchmeyer's opinion in *City of Dallas,* this Court holds that the City of Coral Springs can only regulate the use of its rights-of-way, and cannot· collect more than one percent of the gross receipts on recurring local service revenue for services provided within the city limits. Thus, those parts of Ordinance 97–114 that do not deal directly with managing the rights-of-way must be struck down on grounds of preemption.[5]

■ *Section 20–2. Franchise Required:*[6] This section is valid, but limited, as the grant of a franchise must only be conditioned on a telecommunications com-

pany's agreement to comply with the City's reasonable regulations of its rights-of-way and the fees for use of those rights-of-way. *City of Dallas,* 8 F.Supp.2d 582, 592–93.

■ *Section 20–3. Compensation Required:* This section clearly goes beyond state law which limits the allowable fee to one percent of the gross receipts on recurring local service revenue for services provided within the corporate limits of the municipality. Fla. Stat. § 337.401(3) and (5). Thus, the only valid sections of Section 20–3 are subsection (4) and subsection (5), except for subsection (5)(D). Subsection (4) concerns applications for different types of services, potentially both telecommunications and non-telecommunications. Subsection (5) concerns general procedural rules for payment of the fee, with the exception of subsection (5)(D), which deals with the amount of the fee, which this Court holds is limited by state law as described above.

■ *Section 20–4. General Conditions Upon Use of Rights–of–Way:* This section is valid with the exception of the second sentence of subsection (4). Section 20–4 as a whole is the reasonable regulation of what happens on the ground within the rights-of-way, such as construction procedures, relocation of facility procedures, etc. This regulation is excluded from preemption by both federal and state law. The only exception within Section 20–4 is the second sentence of subsection 20–4(4). While the City may inspect facilities within the rights-of-way, the City does not have the authority to request information regarding systems, plans, or purposes of the telecommunications facilities. See Fla. Stat. § 337.401(6). Such investigation into future plans of a telecommunications

---

**5.** Thus, in keeping with traditional notions of avoiding constitutional determinations when possible, this Court's opinion rests upon statutory preemption, rather than the alternative constitutional grounds asserted by Bellsouth.

**6.** Exhibit A to Bellsouth's Motion for Summary Judgment contains the ordinance at is-

. sue. This was the only copy of the ordinance the Court could find in the record. While this is not a certified copy of the ordinance, the Court researched the text of ordinance and found it the same as the version maintained by the Municipal Code Corporation (*www.municode.com* >).

provider go beyond the allowable reasonable regulation of the management of the rights-of-way.

■ *Section 20–5. Protection of the City and residents:* This section is valid in its entirety. This section concerns indemnification, insurance, bonding and security funds that fall within the FCC's interpretation of "managing the rights-of-way." *In re TCI Cablevision of Oakland County, Inc.,* 12 F.C.C.R. 21396, at ¶ 103 (F.C.C. 1997) (citing *In re Classic Telephone, Inc.,* 11 F.C.C.R. 13082, at ¶ 39 (F.C.C.1996)). These requirements clearly are part of modern construction practices, and should be considered as part of managing rights-of-way.

■ *Section 20–6. Enforcement and Remedies:* This section is also valid in its entirety. This section provides the mechanism for the City to enforce this Ordinance. However, the City cannot use these provisions to enforce any part of the Ordinance deemed preempted by this opinion.

■ *Section 20–7. Transitional Provisions:* This Section is also valid in its entirety. Of course, to the extent that these transitional provisions conflict with Florida Statutes Section 337.401(7) regarding providers lawfully occupying the rights-of-way in Coral Springs, the state law will prevail. However, the Court notes that even this subsection of the state law specifically states that "nothing in this subsection shall be interpreted to limit the power of a municipality to impose a fee or adopt or enforce reasonable rules or regulations as provided in this section."

■ *Section 20–21. Special Rules Applicable to Telecommunications Facilities and Telecommunications Service Providers:* [7] This Section has several provisions which are preempted by federal and state law. Subsection (1) concerns the contents of an application for a franchise. Subsections (1)(C), (D) and (E) impose a requirement that the applicant submit proof of its financial, technical, and legal

qualifications. This type of requirement is preempted by Florida Statutes Section 337.401(7) which reserves to the Public Service Commission the regulation of "qualifications." In addition, the *City of Dallas* opinion specifically holds that such requirements are unrelated to the use of the rights-of-way, and thus beyond the scope of municipal authority. 8 F.Supp.2d at 593. On the other hand, subsection (1)(B) relates directly to the construction of a telecommunications facility, and seeks descriptions of how the new facility fits into the affected rights-of-way, a reasonable regulation of the use of rights-of-way.

■ Subsection (4)(A) also offends state law as it allows the City to review an applicant's qualifications when reviewing a franchise application. As stated above, the City's grant of a franchise must only be conditioned on a telecommunications company's agreement to comply with the City's reasonable regulations of its rights-of-way and the fees for use of those rights-of-way.

■ Subsection (5) concerns compensation, and thus all of subsection 20–21(5) must fail as state law limits such compensation, with the exception of subsection 20–21(5)(E) mandating that the compensation paid must be publicly disclosed by the City. As discussed above, the only fees that may be required are the one percent fee in Section 337.401(3) and the construction fee allowed by Section 337.401(4). Federal law, on the other hand, mandates that the fees paid be publicly disclosed by the City. 47 U.S.C. § 253(c).

■ Subsection (6), entitled *"Additional franchise requirements,"* must fail as well. Universal service is specifically reserved to the state government by the FTA in 47 U.S.C. § 253(b). While states could delegate such authority to local governments, Florida has not done so. *City of Dallas,* 8 F.Supp.2d at 591. Rather, Florida law gives the exclusive authority over "services" to the Public Service Com-

7. Section 20–8. Special Rules for Government Entities is not applicable to this lawsuit.

mission. Fla. Stat. Section 337.401(6). Thus, Coral Springs cannot include within a franchise the reservation to comply with any universal service plan the City may adopt.

Therefore, a declaratory judgment shall issue precluding enforcement of the parts of Ordinance 97–114 that are preempted by federal or state law. The Court's separately entered declaratory judgment shall be based upon this above analysis regarding Ordinance 97–114.

### D. Counterclaims

■ The Court notes that the preemption analysis in this opinion applies to the 1965 contract/ordinance. The Court also notes that Bellsouth's motion for summary judgment in footnote 1 seeks a ruling as a matter of law on Counts I and II of the counterclaims.[8] While the Court disagrees with the reason stated in Bellsouth's footnote, the Court will grant summary judgment to Bellsouth on the City's counterclaims as well.[9]

Counts 1 and 2 of the City's counterclaims seek damages and specific performance based upon Ordinance 106, the 1965 "contract" between the City and Bellsouth. The City seeks to enforce the valuation and buy-out provision to acquire Bellsouth's facilities in the rights-of-way of Coral Springs. Obviously, this government takeover of a telecommunications facilities is way beyond the contemplation of current federal and state law.

While the City may argue that Bellsouth freely contracted in 1965 to give the City this buyout option, Ordinance 106 is not a contract between two private parties. The "contract" in this case is a municipal ordinance, subject to later preemption by changes in state and federal law, and not protected by the Contracts Clause of the Constitution. Thus, as discussed above, Ordinance 106 can only stand if it regulates the use of the rights-of-way and is not a barrier to the provision of telecommunications service. Clearly, the buy-out provision of Ordinance 106 will prohibit Bellsouth from providing such service in the City, and is not a reasonable regulation to manage the rights-of-way.

Therefore, the forced buy-out provision of Ordinance 106 cannot be enforced by the City, as federal and state law now preempt such authority by a local government. Therefore, the City's counterclaims fail as a matter of law, and the Court hereby grants summary judgment on the City's counterclaims to Bellsouth.

### E. Discovery Motions

As the Court has now resolved the merits of all claims and counterclaims in this case, the Court will deny all pending discovery motions as moot.[10] The Court notes that Bellsouth's discovery related to the motivations behind the City's enactment of Ordinance 97–114 are irrelevant, since the Ordinance stands or falls upon its plain language and whether or not it conflicts with the plain language of federal and state law. Similarly, the City's motions to compel motions are also moot, as the Court's declaratory judgment resolves all issues relating to the various provisions of Ordinance 97–114.

### F. Relief

■ The only remaining question is what relief should be granted to Bellsouth. Bellsouth seeks both a declaratory judgment and injunctive relief. The City ar-

---

8. Thus, Bellsouth's Motion to Stay the Counterclaims is hereby denied. The Court notes that Count III of the Counterclaim merely asserts the City's rights under Ordinance 97–114. Thus, summary judgment on Count III is appropriate given the cross-motions for summary judgment on Bellsouth's claims against Ordinance 97–114. For the reasons stated above, the Court will grant in part summary judgment for Bellsouth on Count III of the City's counterclaim.

9. Bellsouth argues that the agreement has expired. However, the City did seek the valuation information under the contract prior to its expiration.

10. The Court notes that earliest pending motion to compel [DE 63, filed by the City] was filed after briefing on the summary judgment motions was complete.

gues that it has not enforced the new ordinance, and thus injunctive relief is not proper.

The Court will issue a declaratory judgment, which it believes moots the issue of injunctive relief. Because the declaratory judgment leaves intact only the reasonable regulation of the rights-of-way provisions of Ordinance 97–114, there is no need to enjoin actions not taken by the City, and no need to enjoin actions this Court has deemed beyond the scope of the City's enforcement authority in the area of telecommunications regulation. The City cannot enforce provisions in an ordinance that have been deemed preempted by federal or state law.

### III. CONCLUSION

Accordingly, for the reasons expressed above, it is

**ORDERED AND ADJUDGED** as follows:

1. Bellsouth's Motion for Summary Judgment [DE 42] is hereby **GRANTED in part** and **DENIED in part;**

2. The City's Cross–Motion for Summary Judgment [DE 51] is hereby **DENIED in part** and **GRANTED in part;**

3. Bellsouth's Motion for Stay [DE 64] is hereby **DENIED;**

4. Bellsouth's Motion to Strike [DE 65] is hereby **DENIED;**

5. The City's Motion for Leave to File Supplemental Motion [DE 81] is hereby **DENIED.** The Court's opinion rests on statutory preemption grounds, not the constitutional grounds which the City's supplemental memo addressed;

6. The remaining discovery motions [DE 63, 83–1, 83–2, 87–1, 87–2, 90, and 91] are hereby **DENIED** as moot.