**BELLSOUTH TELECOMMUNICATIONS, INC.,** Plaintiffs

v.

**TOWN OF PALM BEACH, FLORIDA, Defendant.**

No. 98–8232–CIV.

United States District Court, S.D. Florida.

Sept. 28, 1999.

**1350**

John R. Hargrove, Heinrich Gordon Hargrove Weihe & James, Fort Lauderdale, FL, for Bellsouth Telecommunications, Inc., plaintiff.

John Cater Randolph, Jones Foster Johnston & Stubbs, West Palm Beach, FL, Frederick E Dooley, Joseph Van Eaton, West Palm Beach, FL, Frederick E Dooley, Joseph Van Eaton, William Malone, Miller & Van Eaton, Washington, DC, for Town of Palm Beach, a Florida municipal corporation, defendants.

### *ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

DIMITROULEAS, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judg-

ment [DE 36], Defendant's Motion for Summary Judgment [DE 38], Defendant's Motion to Continue Trial Date [DE 56] and Plaintiff's Motion to Continue Trial Date [DE 58]. The Court has carefully considered the motions and the entire file herein, and is otherwise fully advised in the premises.

## I. BACKGROUND

Bellsouth's Complaint in this action seeks a declaratory judgment and injunctive relief striking down Ordinance 16–97 ("Ordinance") of the defendant Town of Palm Beach ("Town"). Bellsouth argues that the Ordinance is preempted by federal and state law, as well as being unconstitutional under the Florida and United States Constitutions as an impairment of contract, violation of equal protection, violation of due process, violation of delegated powers, violation of Commerce Clause, and a grant of unlawful purpresture. The Town asserts that the Ordinance, concerning the regulation of the use of rights-of-way by telecommunications service, open video systems, and cable television systems, is valid and asserts a counterclaim alleging Bellsouth's failure to comply with the Ordinance. Both sides have filed motions for summary judgment.[1]

## II. DISCUSSION

This case concerns the interaction between federal and state preemption of the regulation of the telecommunications field and the historic power of local governments to control what happens within local rights-of-way. Within the last few years, both the United States Congress and the Florida Legislature have enacted sweeping telecommunications reform legislation. These statutes, while preempting local control over telecommunications in general, explicitly excluded from preemption local

control over rights-of-way. This Court has previously addressed these issues in *BellSouth v. City of Coral Springs*, 42 F.Supp.2d 1304 (S.D.Fla.1999), and in an order on motions to amend or alter in the *Coral Springs* case. The Court notes that the instant Ordinance is substantially similar to the *Coral Springs* ordinance.

### A. Federal Law

In 1996, Congress enacted the Federal Telecommunications Act of 1996 ("FTA"). The relevant section of the FTA for this case is 47 U.S.C. § 253 (1999),[2] which provides:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

1. As previously stated in its Order of February 4, 1999, the Court concludes that there are no disputed material issues of fact with regard to the challenge to the Ordinance at issue. The Ordinance must stand or fall based upon its plain language. Therefore, resolution of the

disputed legal issues in this case is appropriate at the summary judgment stage without the need for discovery.

2. All statutory cites are to 1999.

In Section 253, Congress made a distinction between the authority of states in subsection (b) and local governments in subsection (c). While states may regulate universal service, protect consumers, ensure quality and protect the public safety and welfare, local governments can only manage the public rights-of-way, unless of course a state specifically delegated the state authority to its local governments. *AT & T Communications v. City of Dallas,* 8 F.Supp.2d 582, 591 (N.D.Texas 1998).[3] In addition, since Section 253(c) uses the term state "or" local government, states may preempt local government authority, even over the management of public rights-of-way.

In determining what "manage the public rights-of-way" in federal law means as applied to the Ordinance, this Court will look to the opinion of the agency charged with interpreting and enforcing the FTA, the Federal Communications Commission ("FCC"). The FCC has stated:

> We recognize that section 253(c) preserves the authority of state and local governments to manage public rights-of-way. Local governments must be allowed to perform the range of vital tasks necessary to preserve the physical integrity of streets and highways, to control the orderly flow of vehicles and pedestrians, to manage gas, water, cable (both electric and cable television), and telephone facilities that crisscross the streets and public rights-of-way. We have previously described the types of activities that fall within the sphere of appropriate rights-of-way management in both the Classic Telephone Decision and the OVS Orders, and that analysis of what constitutes appropriate rights-of-way management continues to set the parameters of local authority. These matters include coordination of construction schedules, determination of insurance, bonding and indemnity requirements, establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way to prevent interference between them.

*In re TCI Cablevision of Oakland County, Inc.,* 12 F.C.C.R. 21396, 1997 WL 580831 (F.C.C.1997), at ¶ 103.[4] (Cited with approval in *City of Dallas,* 8 F.Supp.2d at 591–92.)

### B. State Law

The State of Florida has generally delegated power over telecommunication companies to the Public Service Commission ("PSC"), a statewide administrative agency. Fla. Stat. § 364.01. This exclusive jurisdiction of the PSC preempts local control over telecommunication companies, except for the regulation of use of rights-of-way and collection of a reasonable fee for the use thereof. Fla. Stat. § 364.01(2); Fla.

---

3. In applying this law to this case, the Court will follow the well-reasoned opinion of the Honorable Jerry Buchmeyer, Chief Judge of the Northern District of Texas, in *AT & T Communications v. City of Dallas,* as well as its own opinion in *BellSouth v. City of Coral Springs,* 42 F.Supp.2d 1304 (S.D.Fla.1999).

The *City of Dallas* opinion in turn relies upon the analysis in *AT & T v. City of Austin,* 975 F.Supp. 928 (W.D.Tex.1997), a case distinguishable on its facts from the case at bar. In *City of Austin,* the telecommunications provider that sought entry was "non-facility based." 975 F.Supp. at 934. That is, it was not going to use rights-of-way. However, in *City of Dallas,* the plaintiff telecommunications provider sought to provide local phone service by using the City's rights-of-way, a similar situation as in this case. 8 F.Supp.2d at 587. (The fact that the case at bar involves the incumbent Local Exchange Carrier ("LEC"), while City of Dallas concerned a competitor to the incumbent LEC, is irrelevant, as Congress specifically stated in subsection 253(c) that local government rights-of-way regulation must be non-discriminatory.)

4. See also the *Classic Telephone* decision, in which the FCC stated that a city may only justify a local statute, regulation, or other legal requirement if it can show that the requirement is "an exercise of public rights-of-way management authority or the imposition of compensation requirements for the use of such rights-of-way." 11 F.C.C.R. 13082, at ¶ 40.

Stat. § 337.401.[5] However, state law further restricts municipal regulation of telecommunication companies by limiting the fee allowed to be collected by municipalities from telecommunications companies for the granting of permission to occupy municipal rights-of-way to one percent of the gross receipts on recurring local service revenue for services provided within the corporate limits of the municipality. Fla. Stat. § 337.401(3) and (5).[6] In addition, in 1998, the Florida legislature amended this section to explicitly forbid local governments from "asserting or exercising regulatory control" over telecommunications companies regarding operations, systems, qualifications, services, service quality, service territory, and pricing. Fla. Stat. § 337.401(6). Finally, this 1998 amendment also made clear that any telecommunications company that has obtained permission to occupy or is otherwise lawfully occupying the roads or rights-of-way of a municipality on May 22, 1998, "shall not be required to obtain additional consent to continue such lawful occupation of those roads or rights-of-way," except that a municipality may impose a fee or reasonably regulate the use of the rights-of-way. Fla. Stat. § 337.401(7).

The Supreme Court of Florida has long recognized that telephone companies have the right to use the public roads and highways of Florida. *Southern Bell Telephone & Tel. Co. v. Ervin*, 75 So.2d 796, 798 (Fla.1954). This right is conditioned on the responsibility not to obstruct or interfere with the use of the rights-of-way. *Id.* at 799. As it turns out, this 1954 holding is consistent with the recent federal and state legislation limiting regulation of telecommunications by local governments to reasonable regulation of the rights-of-way.

**C. Ordinance 16–97**

As outlined above, while federal and state law preempt local control over telecommunication companies, both Congress and the Florida legislature specifically excluded from preemption municipal control over rights-of-way. In addition, both state and federal law allow municipalities to collect a 1% gross receipts fee from telecommunication companies that use rights-of-way in that locality, as well as the recovery of certain costs incurred by the municipality as a result of the specific use of the right-of-way.

█ Bellsouth's arguments gloss over this specific exclusion from preemption for municipalities in both federal law and state law. While Bellsouth relies upon the otherwise exclusive jurisdiction provided to the Florida Public Service Commission, Chapter 364 specifically states that "the authority and powers granted in Sections 166.231(9) and 337.401" are not affected by this Chapter. Florida Statutes § 364.02(2). At the same time, the Town attempts to distinguish the instant ordinance from the one at issue in the *Coral Springs* case by noting that the fee to be imposed is not specified in the Town's ordinance. The fact that the fee is not specified does not change the fact that the compensation provision as to telecommunications service companies is preempted by state law.[7]

█ Following the plain language of both the state and federal statutes, this Court holds that the Town of Palm Beach can only regulate the use of its rights-of-way, and cannot collect more than one percent of the gross receipts on recurring local service revenue for services provided

---

**5.** Local governments also have the power to tax the use of telecommunication services. Fla. Stat. § 166.231(9). That provision is not relevant to this discussion.

**6.** Municipalities may also impose a fee for costs directly related to the "impairment solely caused by the disturbance of the municipal right of way," "the reasonable cost of the

regulatory activity of the municipality," and "the proportionate share of cost of land for such ... public way attributable to utilization of the right-of-way by a telecommunications service provider." See Fla. Stat. § 337.401(4).

**7.** The fact that the fee is not specified arguably makes the ordinance void for vagueness.

**1354**

within the municipality limits, in addition to the costs allowed by Florida Statutes Section 337.401(4). Thus, those parts of the Ordinance that do not deal directly with managing the rights-of-way are unenforceable as to Bellsouth on grounds of preemption.[8]

The Court now turns to an analysis of the sections of the ordinance challenged herein:

■ *Section 2. Franchise Required:*[9] This section is valid, with the exception of a limitation on subsection 2.2. As to telecommunications facility operators, the requirement of a franchise must only be for facilities that are within a public right-of-way. Thus, if a telecommunications company can provide telecommunications services without using the rights-of-way, a municipality has no jurisdiction under federal law to require a franchise. *AT & T v. City of Austin*, 975 F.Supp. 928 (W.D.Tex. 1997). In addition, as to the last sentence of subsection 2.2, even if the rights-of-way are used, the grant of a franchise must only be conditioned on a telecommunications company's agreement to comply with the Town's reasonable regulations of its rights-of-way and the fees for use of those rights-of-way. *City of Coral Springs*, 42 F.Supp.2d at 1309; *City of Dallas*, 8 F.Supp.2d at 592–93.

■ *Section 3. Compensation Required:* Subsections 3.1, 3.3, 3.4, 3.5 and 3.6 are valid in that they concern the purpose, procedures for, and exemptions from the imposition of an allowed fee for use of the rights-of-way. However, Section 3.2 *"Every operator must pay,"* while distinguishable from the *City of Coral Springs* case in that no specific fee is imposed, is unenforceable as to telecommunications companies because state law limits the allowable compensation for use of rights-of-

way to one percent of the gross receipts on recurring local service revenue for services provided within the corporate limits of the municipality, plus certain costs of disruption and oversight. Fla. Stat. § 337.401(3), (4) and (5).

■ *Section 4. General Conditions Upon Use of Rights–of–Way:* This section is generally valid as the reasonable regulation of what happens on the ground within the rights-of-way, such as construction procedures, relocation of facility procedures, etc. This regulation is excluded from preemption by both federal and state law, with certain exceptions and limitations. For example, Subsection 4.2.2, which refers to "all required permit and associated fees" is limited by Florida Statutes section 337.401 to the one percent fee and the costs allowable by § 337.401(4), as explained above. Subsection 4.4 is limited to the Town's inspection of facilities within the rights-of-way. The Town does not have the authority to request information regarding systems, plans, or purposes of the telecommunications facilities. *See* Fla. Stat. § 337.401(6). Such investigation into future plans of a telecommunications provider go beyond the allowable reasonable regulation of the management of the rights-of-way. In addition, subsection 4.4 also impermissibly grants the Town the right to notice of and presence at any testing. This notice imposes an operational requirement forbidden by state law. *See* Fla. Stat. § 337.401(6). Thus, the second and third sentences of subsection 4.4 are unenforceable against Bellsouth as a telecommunications company. Finally, subsection 4.2.6, which requires Bellsouth at the Town's request to install conduit in excess of its own requirements for the purpose of accommodating other franchisees for a charge, is also unenforceable, as

---

**8.** Thus, in keeping with traditional notions of avoiding constitutional determinations when possible, this Court's opinion rests upon statutory preemption, rather than the alternative constitutional grounds asserted by Bellsouth. However, the Court will briefly address the

constitutional arguments regarding those provisions of the ordinance that are upheld.

**9.** A certified copy of the Ordinance may be found at docket entry 43.

it also imposes an operational requirement that state law forbids. *Id.*

■ *Section 5. Protection of the Town and residents:* This section is valid in its entirety. This section concerns indemnification, insurance, bonding and security funds that fall within the FCC's interpretation of "managing the rights-of-way." *In re TCI Cablevision of Oakland County, Inc.,* 12 F.C.C.R. 21396, at ¶ 103 (F.C.C. 1997) (citing *In re Classic Telephone, Inc.,* 11 F.C.C.R. 13082, at ¶ 39 (F.C.C.1996)). These requirements clearly are part of modern construction practices, and should be considered as part of managing rights-of-way.

■ *Section 6. Enforcement and Remedies:* This section is also valid in its entirety. This section provides the mechanism for the Town to enforce this Ordinance. However, the Court notes that subsection 6.5, regarding revocation procedures, cannot under federal law be used to prohibit or have the effect of prohibiting the ability of any entity to provide telecommunications service to the public. 47 U.S.C. § 253(a). In addition, the Town cannot use any of the enforcement provisions to enforce any part of the Ordinance deemed unenforceable against Bellsouth by this opinion.

■ *Section 20–7. Transitional Provisions:* This Section is also valid in its entirety. Of course, to the extent that these transitional provisions conflict with Florida Statutes Section 337.401(7) regarding providers lawfully occupying the rights-of-way in the Town, the state law will prevail. However, the Court notes that even this subsection of the state law specifically states that "nothing in this subsection shall be interpreted to limit the power of a municipality to impose a fee or adopt or enforce reasonable rules or regulations as provided in this section."

■ *Title II–Special Rules Applicable to Telecommunications Facilities and Telecommunications Service Providers:* [10] This Section has several provisions which are preempted by federal and state law. Subsections 1.1.3, 1.1.4, and 1.1.5 impose requirements that the applicant submit proof of its financial, technical, and legal qualifications. This type of requirement is preempted by Florida Statutes Section 337.401(6) and (7), which reserve to the Public Service Commission the regulation of "qualifications." In addition, the *AT&T Communications of Southwest v. City of Dallas* opinion specifically holds that such requirements are unrelated to the use of the rights-of-way, and thus beyond the scope of municipal authority. 8 F.Supp.2d. 582, 593 (N.D.Tex.1998). On the other hand, subsections 1.1.1 and 1.1.2 relate directly to the construction of a telecommunications facility, and seek descriptions of the location, size, route, power sources, noise, and construction techniques of the new facility in the affected rights-of-way, a reasonable regulation of the use of rights-of-way.

■ Subsection 1.4.1 of title [ ] also offends state law as it allows the Town to review an applicant's qualifications when reviewing a franchise application. As stated above, the Town's grant of a franchise must only be conditioned on a telecommunications company's agreement to comply with the Town's reasonable regulations of its rights-of-way and the fees for use of those rights-of-way. Thus, subsection 1.4 itself is valid, but limited to modifications of facilities within the rights-of-way necessary to reasonably regulate the use of the right-of-way.

■ Subsection 1.5 concerns compensation, and thus all of subsection 1.5 must fail as state law limits such compensation, with the exception of subsection 1.5.5 mandating that the compensation paid must be publicly disclosed by the Town. As dis-

10. Section 8—Special Rules for Government Entities, Title III—Special Rules Applicable to Open Video Systems, Title IV–Special Rules Applicable to Cable Television Systems, and Title V–Private Communications Facilities are not applicable to this lawsuit.

cussed above, the only fees that may be required are the one percent fee in Section 337.401(3) and the construction fees allowed by Section 337.401(4). Federal law, on the other hand, mandates that the fees paid be publicly disclosed by the Town. 47 U.S.C. § 253(c).

Subsection 1.6, entitled *"Additional franchise requirements,"* must fail as well. Universal service is specifically reserved to the state government by the FTA in 47 U.S.C. § 253(b). While states could delegate such authority to local governments, Florida has not done so. *City of Dallas,* 8 F.Supp.2d at 591. Rather, Florida law gives the exclusive authority over "services" to the Public Service Commission. Fla. Stat. Section 337.401(6). Thus, the Town cannot include within a franchise the reservation to comply with any universal service plan the Town may adopt.

### D. Severability

Bellsouth argues in its motion that if the compensation portions of Ordinance 16–97 are stricken, then the entire Ordinance must fail. The Court rejects this argument.

Federal courts look to state law to determine issues of severability of local ordinances. *Leavitt v. Jane L.,* 518 U.S. 137, 139, 116 S.Ct. 2068, 2069, 135 L.Ed.2d 443 (1996) ("Severability is of course a matter of state law"). In Florida, the relevant test is:

> When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions

are stricken. *Waldrup,* 562 So.2d at 693 (*quoting Cramp,* 137 So.2d at 830). *Accord Tirohn,* 556 So.2d at 449.

*Schmitt v. State of Florida,* 590 So.2d 404, 414–15 (Fla.1991). This test rests on another Florida rule that severability does not always depend on the inclusion of a severability clause in a legislative enactment. Such a clause only buttresses the case for severability. 590 So.2d at 415.

Applying the above test to the instant case, the Court determines that severability is appropriate. The Ordinance contains several express purposes, including obtaining compensation for use of rights-of-way, but also to properly manage what happens within those rights of-way. While this Order limits the amount of compensation the City can obtain from Plaintiff, the legislative purposes expressed by the City, including receipt of compensation, can still be accomplished. Since a savings clause is found within the Ordinance in Title VI, section 3 on page 59 of 60 [DE 43], it cannot be said that the Town Council would not have passed the remaining parts of the Ordinance following the Judgment entered in this case. Finally, the Court concludes that a separate act complete in itself remains after certain portions are stricken or deemed unenforceable against Bellsouth.

Of course, it is up to the Town to determine whether it wishes to keep the severed provisions as written or amend the Ordinance consistent with this Court's Orders. The Town Council, as the elected legislature, must decide for itself whether the severed provisions are or will be difficult to enforce as written, or whether amendments are necessary.

### E. Bellsouth's Constitutional Arguments

Since the Court is rejecting some of Bellsouth's statutory arguments, the Court will briefly discuss Bellsouth's constitutional arguments against validity of the instant Ordinance. First, as to impairment of contract, the Ordinance does not

prevent or invalidate any contracts. As discussed above, federal law prohibits municipalities from prohibiting any telecommunications services— that municipalities may monitor and permit construction in local streets and receive minimal compensation for that disruption does not impose an impairment of contract that violates the state or federal Constitutions.

 Second, the Ordinance does not violation the equal protection clause as this Court has struck the "unspecified" fees provision Bellsouth argues is an equal protection violation. Third, as to a violation of due process as a taking of a property right, the property right Bellsouth invokes was granted pursuant to state law. State law itself allow municipalities to exercise their historic jurisdiction over what happens within local rights-of-way. Thus, the state itself is conditioning the "vested property right" Bellsouth claims to state law allowing municipal authority over rights-of-way.

 Finally, Bellsouth's motion argues that the Ordinance violates the "dormant" Commerce Clause, whereby state and local governments are prevented from enacting legislation which unduly burdens interstate commerce. The "dormant" Commerce Clause, however, does not apply when Congress specifically allows state or local regulation in a particular field. CITE. In this case, 47 U.S.C. § 253(c) specifically allows state or local government to manage the public rights-of-way and require reasonable compensation from telecommunications providers.

### F. Counterclaim

The Town filed a counterclaim in this case seeking to obtain compensation under the Ordinance. Since this Court has now ruled that the compensation provisions are unenforceable as to Bellsouth, the Court will sua sponte grant summary judgment to Bellsouth on the Town's counterclaim.

### G. Relief

The only remaining question is what relief should be granted to Bellsouth. Bellsouth seeks both a declaratory judgment and injunctive relief. The City argues that injunctive relief is not proper.

 This Court shall issue a declaratory judgment precluding enforcement of the parts of the Town's Ordinance that are preempted by federal or state law, which it believes moots the issue of injunctive relief. Because the declaratory judgment leaves intact only the reasonable regulation of the rights-of-way provisions of Ordinance 16–97, there is no need to enjoin actions not taken by the Town, and no need to enjoin actions this Court has deemed beyond the scope of the Town's enforcement authority in the area of telecommunications regulation. The Town cannot enforce provisions in an ordinance that have been deemed preempted by federal or state law.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 36] is **GRANTED** in part;

2. Defendant's Motion for Summary Judgment [DE 38] is **GRANTED** in part;

3. Defendant's Motion to Continue Trial Date [DE 56] and Plaintiff's Motion to Continue Trial Date [DE 58] are hereby **DENIED AS MOOT,** as the Court will separately issue a Final Declaratory Judgment that ends this case;

4. Any other pending motions are hereby **DENIED AS MOOT;**